UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| DONALD MOREHOUSE | ) | 1:02 CV 1767 |
| | ) | |
| Plaintiff, | ) | JUDGE MANOS |
| | ) | |
| v. | ) | |
| | ) | |
| FORD MOTOR COMPANY | ) | |
| | ) | |
| Defendant. | ) | |
| | * * * * * | |

## PLAINTIFF'S MOTION FOR REMAND

Now comes Plaintiff, by and through counsel, to respond to the Notice of Removal filed by Ford

Motor Company ("Ford" or "Defendant"), and further, to request that this Honorable Court remand the

action, pursuant to 28 U.S.C. §1447(c) to the Cuyahoga County Court of Common Pleas.  A

Memorandum in Support of this Motion is attached hereto and incorporated herein by reference.

Respectfully submitted,

_____
R. Eric Kennedy (0006174)
WEISMAN, GOLDBERG, & WEISMAN,
    CO., L.P.A.
Suite 1600 Midland Building
101 Prospect Ave. West
Cleveland, Ohio 44115
(216) 781-1111

Don Barrett
Charles F. Barrett
BARRETT LAW OFFICE, P.A.
404 Court Square North
P.O. Box 987
Lexington, MS 39095
(662) 834-2376
ATTORNEYS FOR PLAINTIFF

## MEMORANDUM

### I. INTRODUCTION

Plaintiff respectfully submits this Memorandum in support of his Motion for an Order remanding this action to the Cuyahoga County Court of Common Pleas, pursuant to 28 U.S.C. §1447(c). Contrary to Defendant's assertions, Plaintiff's Class Action Complaint ("Complaint") sets forth allegations that neither "arise under" federal law, nor provide a ground upon which this Court could base jurisdiction. Further, although complete diversity exists between Defendant, Plaintiff, and the Class of individuals that Plaintiff seeks to represent, the Complaint does not allege an amount-in-controversy to satisfy the $75,000.00 jurisdictional requirement under 28 U.S.C. § 1332. Accordingly, this action should be remanded to the state court where it was originally filed.

### II. FACTUAL BACKGROUND

This matter involves Ford Crown Victoria automobiles that were designed, manufactured and sold by Defendant Ford Motor Company ("Ford" or "Defendant") Plaintiff Donald Morehouse filed a putative Class Action Complaint in the Cuyahoga County Court of Common Pleas on August 2, 2002, alleging negligence, violations O.R.C. §§ 1302.26, 1302.27, unjust enrichment, fraud, and conversion on behalf of himself and a Class consisting of "all persons or entities in the United States who purchased, owned, or leased new or used 1992-2002 model

Crown Victorias." Plaintiff alleges that the Crown Victoria is defective in that the gas tank is

improperly located and designed and thus prone to leaks, fires and explosions when the vehicle is

struck from behind. This defect has led to several cases of severe burn injuries and deaths

nationwide since 1992. Relying solely upon Ohio law, Plaintiff alleged that Ford knowingly

concealed from Plaintiff and Class members the inherent design problems and the resulting fuel-

fed fires. Class. Compl., ¶ 71.

Defendant, Ford Motor Company ("Ford" or "Defendant"), filed a notice of removal on

September 6,  2002, alleging federal question jurisdiction under 28 U.S.C. § 1331 as well as

diversity and supplemental jurisdiction under 28 U.S.C. §§ 1332 and 1367.  As Defendant has

failed to meet its burden of proving that such jurisdiction exists, the matter should be remanded –

its issues resolved in state court.

## III.    LAW AND ARGUMENT

The defendant that removes a case from state court "bears the burden of establishing

federal subject-matter jurisdiction." *Jerome-Duncan v. Auto-By-Tel, L.L.C.*, 176 F.3d 904, 907

(6th Cir.1999); *McIntire v. Ford Motor Co.*, 142 F.Supp.2d 911 (S.D. Ohio 2001), *citing McNutt

v. General Motors Acceptance Corp. of Indiana*, 298 U.S. 178, 189, 56 S.Ct. 780 (1936).  When

the party asserting federal jurisdiction finds its allegations challenged, it must submit evidence

substantiating its claims.  *Amen v. City of Dearborn*, 532 F.2d 554, 560 (6th Cir. 1976).  The

removing defendant's burden is to prove, by a preponderance of the evidence, that the

jurisdictional facts it alleges are true.  *Gafford v. General Electric Co.*, 997 F.2d 150, 158 (6th

Cir. 1993) .  Because federal courts are courts of limited subject matter jurisdiction, removal

statutes are strictly construed, and all doubts as to propriety of removal are resolved in favor of

remand. *Alexander v. Electronic Data Systems Corp.*, 13 F.3d 940, 949 (6th Cir.1994) ("[A]ny

disputed questions [of] fact and ambiguities in the controlling state law should be resolved . . . in

favor of the non-removing party.")

> **A.   This Matter Should Be Remanded as Defendant Cannot Meet its Burden of Demonstrating That this Court Has Federal Question Jurisdiction.**

Whether a claim arises under federal law for purposes of federal question jurisdiction is

governed by the "well-pleaded complaint" rule, which provides "that the plaintiff is the master of

the complaint, that [for removal to be proper], a federal question must appear on the face of the

complaint, and that the plaintiff may, by eschewing claims based on federal law, choose to have

the cause heard in state court." *Warner v. Ford Motor* Co., 46 F.3d 531, 534-35 (6th Cir. 1995),

*quoting Caterpillar, Inc. v. Williams*, 482 U.S. 386, 398-99, 107 S.Ct. 2425, 2433 (1987).

Because the defense of federal preemption ordinarily does not appear on the face of a complaint,

it is insufficient to authorize removal to federal court. *Strong v. Telectronics Pacing Systems,

Inc.*, 78 F.3d 256, 259, 261 (6th Cir. 1996); *see also Metropolitan Life Ins. Co. v. Taylor*, 481

U.S. 58, 63, 107 S.Ct. 1542 (1987); *Caterpillar Inc.*, 482 U.S. at 393, 107 S.Ct. 2425.

"Complete preemption", however, is an exception to this general rule.  The complete

preemption doctrine "holds that when Congress intends the preemptive force of a statute to be so

extraordinary that it completely preempts an area of state law, 'any claim purportedly based on

that preempted state law is considered, from its inception, a federal claim, and therefore arises

under federal law.'" *Strong*, 78 F.3d at 259, *quoting Caterpillar Inc.*, 482 U.S. at 393, 107 S.Ct.

2425.  The United States Supreme Court first recognized the complete preemption doctrine more

than thirty years ago in a case involving Section 301 of the Labor Management Relations Act

("LMRA"). *See Avco Corp. v. Aero Lodge No.*, 735, 390 U.S. 557, 560, 88 S.Ct. 1235, 1237

(1968), Since doing so, the Court has revisited the doctrine only sparingly, and in the context of

only one other federal statute – Section 502(a)(1)(B) of the Employee Retirement Income

Security Act ("ERISA"), *Metropolitan Life*, 481 U.S. 58, 107 S.Ct. 1542. *See also Strong*, 78

F.3d at 259. The Sixth Circuit has similarly shown great reluctance to extend the doctrine into

areas of the law beyond the two statutes. *Strong*, 78 F.3d at 260; *Warner*, 46 F.3d at 534-35.

Notably, Defendant has failed to cite *Strong* and *Warner*, the two 6th Circuit cases on point to the

question of federal question jurisdiction.

     In *Warner*, the Sixth Circuit considered whether a state age discrimination claim was

properly removed to federal court on the grounds that the plaintiff's claim was preempted by §

1144 of ERISA. The Defendant argued that removal based on complete preemption was

appropriate because plaintiff's claim necessarily called into question the validity of his retirement

agreement, which was governed exclusively by ERISA. In rejecting the defendant's argument,

the Sixth Circuit held that the removal was improper and reversed the district court's denial of

the plaintiff's motion to remand. The Court reasoned that the Congressional intent necessary to

confer removal jurisdiction through complete preemption would be expressed only through the

creation of a parallel federal cause of action that would convert a state cause of action into the

federal one for purposes of the well-pleaded complaint rule. *Warner*, 46 F.3d 531, 534-35.

Because 29 U.S.C. § 1144 expressly superseded any and all state laws, but did not create a

federal cause of action that could convert a state cause of action into a federal one, the Sixth

Circuit held that complete preemption did not exist. *Warner*, 46 F.3d at 534-35.

     Similarly, in *Strong*, 78 F.3d at 260, the recipient of a pacemaker brought an action in

state court, asserting claims against the manufacturer of the device and a treating a physician. The manufacturer removed the case to federal court, claiming that federal question jurisdiction under the complete preemption doctrine existed where the Medical Device Amendments to Federal Food, Drug, and Cosmetic Act ("MDA") both preempts state law claims and provides exclusive federal remedies for violations of the Act. *Id.* at 259.  Unpersuaded by the defendant's argument, the Sixth Circuit concluded that the removal was improper and reversed the district court's denial of the plaintiff's motion to remand. *Id.*  Observing that the MDA expressly preempted the plaintiff's state cause of action but failed to create a parallel federal one, the Court again held that the federal statute lacked the congressional intent necessary to confer removal jurisdiction through complete preemption. *Id.* at 260, *citing Warner v. Ford Motor* Co., 46 F.3d at 534-35.

Like the defendants in *Strong*, and *Warner*, Ford suggests that the claims asserted by Plaintiff in the within matter are necessarily covered by federal legislation.  Notice of Removal, ¶¶ 17-19.  Specifically, the defendant argues that Plaintiff's complaint necessarily implicates the National Traffic and Motor Vehicle Safety Act, 49 U.S.C. § 30118, *et seq.* ("Safety Act"), which, Defendant asserts, is necessarily implicated by the discovery of a defect. Notice of Removal, ¶17. Ford suggests that, "appropriate relief against Ford would likely include a recall of the vehicles at issue." *Id.*

Ford, not surprisingly, has misconstrued Plaintiff's "true desire."  Plaintiff is not seeking a vehicle-related recall, and *intentionally* did not demand such relief on the face of his "well-pleaded Complaint."  Rather, the "master of the complaint" deliberately chose to eschew claims based on federal law, in favor of those based on Ohio statutory and common law.  In Count One,

6

he alleges that Ford breached its duty to exercise reasonable care in the "formulation, testing, design, manufacture, and marketing of its Crown Victoria." (for which he seeks compensatory damages). Compl., ¶¶ 47-50.  In Count Two, Plaintiff alleges breach of contract (for which he again seeks compensatory damages.). Compl., ¶¶ 51-55.  Plaintiff alleges unjust enrichment in Count Three (for which he seeks "restitution and/or disgorgement and other equitable relief as the Court deems proper."). Compl. ¶¶ 56-59. Counts Four and Five are brought pursuant to Ohio Revised Code §§ 1302.26 and 1302.27, alleging breach of express warranty and breach of implied warranty respectively. Plaintiff's second Count Five alleges Fraud (for which he seeks compensatory and punitive damages.), and the Plaintiff's final Count alleges conversion (for which Plaintiff seeks "restitution, disgorgement, and an award of their legal expenses and fees, as permitted by law."). None of these state causes of action "arise under" the Safety act.  Nor, contrary to Defendant's assertion, would Plaintiff need to establish that Ford violated the Safety Act in order to prevail on any of the aforementioned Counts.  *See* Notice of Removal at ¶ 19. Even assuming, *arguendo*, that these claims ultimately proved to be defensible based upon ordinary federal preemption, that would still not justify their removal to federal court.  "In a nonremovable case such as this, 'the federal preemption defense . . . would be decided in state court and would be subject to review on certiorari in the U.S. Supreme Court.'" *Strong* 78 F.3d at 259, 261, *quoting Warner*, 46 F.3d at 535.

Like those statutes examined by the Sixth Circuit in *Strong* and *Warner*, the Safety Act lacks the congressional intent necessary to confer removal jurisdiction through complete preemption.  Significantly, the Safety Act fails to create a parallel federal cause of action that could convert a consumer's state cause of action into the federal one for purposes of the well-

7

pleaded complaint rule.  Instead, the Safety Act authorizes the Attorney General to bring a civil

action in federal court to enjoin violations of the Act or of regulations or orders issued by the

Secretary of Transportation.  *See* 49 U.S.C. § 30163.  Moreover, any civil penalties imposed for

violations of the Safety Act are paid not to private parties – but to the United States Government.

*Id.* at § 30165(a).  Entirely absent from this framework is the right of individuals to bring suit in

federal court seeking damages or injunctive relief.

      Further evidence that Congress did not intend for the Safety Act to create removal

jurisdiction despite a plaintiff's exclusive reliance on state law is demonstrated in the Safety

Act's "savings clause."  *Id.* at § 30103.  This portion of the statute expressly provides that

"compliance with a Federal motor vehicle safety standard does not exempt a person from liability

at common law," and that a recall under the act does not displace "any rights and remedies under

other laws of the United States or a state."  *Id.* at (d), (e).

      In light of the foregoing, Defendant has failed to meet its burden of establishing complete

preemption and thus has failed to meet its burden of demonstrating that federal question

jurisdiction is appropriate.

**B.     This Matter Should Be Remanded as Defendant Has Not Established**
**           Diversity Jurisdiction.**

      For purposes of removing an action from state court, the burden of establishing federal

jurisdiction rests "clearly upon the defendant as the removing party." *Alexander v. Electronic*

*Data Systems Corp.*, 13 F.3d 940, 949 (6th Cir.1994).  In order to establish diversity jurisdiction,

a removing Defendant has the burden of proving that 1) there is complete diversity of citizenship

between the parties, and 2) that the amount in controversy exceeds the $75,000 requirement.  28

U.S.C. § 1332(a); *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 179, 56 S.Ct. 780 (1936); *Gafford v. General Electric Co.*, 997 F.2d 150, 155 (6th Cir. 1993). For cases involving two or more plaintiffs, "[a]ny plaintiff who does not satisfy the amount in controversy must be dismissed." *Zahn v. International Paper Co.*, 414 U.S. 291, 301, (1973).

Generally, "because the plaintiff is the master of the claim, a claim specifically less than the federal requirement *should* preclude removal." *Perotti v. Black & Decker*, 205 F.Supp.2d 813 (N.D. Ohio, 2002), *quoting Rogers v. Wal Mart Stores, Inc.*, 230 F.3d 868, 871 (6th Cir.2000). Where a plaintiff originally files in state court, alleging an amount-in-controversy that is less than the jurisdictional threshold, a removing defendant will need to demonstrate, to a legal certainty or 'substantial likelihood,' that plaintiff was in error regarding the value of his claim. *Id.* at 157, *citing St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288-89, 58 S.Ct. 586, 590-91 (1938) ("If [the plaintiff] does not desire to try his case in the federal court he may resort to the expedient of suing for less than the jurisdictional amount, and though he would be justly entitled to more, the defendant cannot remove."); *see also Crosby v. America Online, Inc.*, 967 F.Supp. 257, 260 (N.D. Ohio, 1997). Where, in a state-filed complaint, however, a plaintiff seeks to recover some unspecified amount that is not self-evidently greater or less than the federal amount-in-controversy, the defendant must prove that the amount-in-controversy will, more likely than not, satisfy the jurisdictional requirement. *Id.*

In the present matter, Plaintiff does not dispute that complete diversity of citizenship exists between Ford and the putative plaintiff class. Plaintiff does, however, challenge Ford's assertion that the amount in controversy exceeds the $75,000 threshold for Plaintiff and each class member.

9

    1)    Defendant is Unable to Prove to a Substantial Certainty That Plaintiffs Satisfy the Amount in Controversy.

Ford is unable to meet its burden by showing to a legal certainty or by a preponderance of the evidence, that the claims of Plaintiff and each Class member satisfy the amount-in-controversy requirement. Plaintiff seeks compensatory damages, punitive damages, and restitution and/or disgorgement or other equitable relief as the Court deems appropriate. Compl.¶ 82. Contrary to Defendant's assertion, the damages that Plaintiff is seeking and that are available to Plaintiff and each class member under the counts amount to significantly less than the jurisdictional minimum.

If plaintiffs prevail on Count One (Negligence), Count Two (Breach of Contract), Count Four (Breach of Express Warranty), or Count Five (Breach of Implied Warranty), the relief available to Plaintiff and to each class member is equal to the difference between the value of the automobile he/she purchased and the value of the automobile that, because of Ford's concealment, he/she thought was being purchased. O.R.C. §§ 1345.09(A)(B). The compensatory damages for each plaintiff, although totaling different amounts, would be *significantly* less than $75,000. More importantly, as Defendant bears the burden of proof, Defendant has not offered any evidence that a compensatory award would be significant.

Individuals who can establish injury as a result of deception or a violation of the OCSPA may also be awarded punitive (trebled damages) as well as reasonable attorney fees. *Id. See also Evans v. Cheek*, 65 Ohio App.3d 535, 537, 584 N.E.2d 1236, 1238. In *Evans*, a buyer purchased a van for $7,000. The van was not of the quality as represented by the seller and the sale resulted in the violation of the OCSPA. *Id.* The trial court calculated damages by adding the present

10

value of the van ($500) to the use value of the van ($2000) and subtracting that amount from the

cost of the van ($7,000).  The court then trebled that amount and awarded the buyer $13,500 in

addition to attorney fees of $800. *Id.*  Although the statute seems to expressly prohibit class

action plaintiffs from being awarded such punitive (treble) damages, it suggests the possibility of

recovering other appropriate relief under Civil Rule 23.

In Count Three, Plaintiff alleges that Ford was unjustly enriched by deceptive and

unlawful sales of the company's Crown Victorias.  Again, despite Defendant's suggestion to the

contrary, if Plaintiff is successful in pursuing this claim, he/she is only entitled to his/her share of

the profits that Ford unjustly earned from him/her during a deceptive sale, an amount

considerably less than $75,000, even when combined with potential awards from other counts. It

should be noted that there is not evidence to the contrary.


2)      Aggregation of Punitive Damages and/or Disgorgement Claims to Allow
        Plaintiffs to Individually Meet the Amount in Controversy Requirement Is Not
        Proper in this Case.

Defendant submits that the claims of punitive damages and disgorgement should be

considered by this Court in assessing federal court jurisdiction, and that when aggregated and

added to Plaintiff's claims for compensatory damages, the resulting amount would place the

value of this matter above the jurisdictional threshold for each individual plaintiff.  Notice of

Removal, ¶¶ 12-13. Defendant's position however, is unrealistic.

It is a general and well founded rule that "when several plaintiffs assert separate and

distinct demands in a single suit, the amount involved in each separate controversy must be of the

requisite amount to be within the jurisdiction of the district court, and those amounts cannot be

added together to satisfy jurisdictional requirements." *Clark v. Paul Gray, Inc.*, 306 U.S. 583,

589, (1939); *Zahn v. International Paper Co.*, 414 U.S. 291, (1973). That plaintiffs have filed a

class action suit does not alter this rule. *Zahn* at 301. Under certain circumstances however,

claims of individual class members can be aggregated to satisfy the jurisdictional amount

requirement. *Lemmon v. Cedar Point, Inc.*, 406 F.2d 94, 96 (6th Cir.1969). *Klepper v. First*

*American Bank*, 916 F.2d 337, 341 (6th Cir.1990). The aggregation of damages to satisfy the

amount in controversy requirement is appropriate only "when two or more plaintiffs unite to

enforce a single title or right in which they have a common and undivided interest." *Sellers v.*

*O'Connell*, 701 F.2d 575, 579 (6th Cir.1983) Such an interest exists when "one plaintiff cannot or

does not collect his share, the shares of the remaining plaintiffs are increased." *Sellers* quoting

*Snyder v. Harris*, 394 U.S. 332, 335. As one court expressed the concept of the undivided

interest, aggregation should be applied only to cases:

> which involve a single indivisible res, such as an estate, a piece of
> property (the classic example), or an insurance policy. These are
> matters that cannot be adjudicated without implicating the rights of
> everyone in the res."

*Gilman v. BHC Securities, Inc.*, 104 F.3d 1418 (2d Cir.1997), *quoting Bishop v. General Motors*

*Corp.*, 925 F. Supp. 294, 298 (D.N.J.1996).

The trend among the Circuit Courts has been in favor of disallowing aggregation of

punitive damages among the putative class members. *See Sellers v. O'Connell*, 701 F.2d 575 (6th

Cir.1983), holding that aggregation of the punitive claim was not allowed for plaintiff who filed

suit for pension benefits. Courts have followed the general notion that "since each class member

has a separate and distinct interest in a portion of the total punitive damages, the amount claimed

12

must be apportioned among all class members. *Knauer v. Ohio State Life Insurance Co.*, 102

F.Supp.2d 443, 449 (N.D. Ohio 2000), quoting *Gilman v. BHC Secs., Inc.* 104 F.3d 1418 (2nd

Cir.1997). *See also Martin v. Franklin Capital Corp.*, 251 F.3d 1292-3 (10th Cir.2001),

disallowing aggregation of punitive damages for consumers who brought action against insurer

alleging deliberate overcharging for required insurance; *Ard v. Transcon. Pipe Line Corp.,* 138

F.3d 596, 601-02 (5th Cir.1998), holding that aggregation of punitive damages could not be

aggregated to satisfy the amount in controversy requirement for plaintiff class who suffered

damages from a pipeline explosion; *Morrison v. Allstate Indemnity Co.*, 228 F.3d 1255, 1264-65

(11th Cir.2000), not allowing aggregation of potential punitive damage claim for class who

brought suit alleging the same claim as Plaintiff in before this Court- diminished value of

vehicles; *Gilman v. BHC Secs., Inc. 104 F.3d 1418 (2nd Cir.1997). But see Everett v. Verizon

Wireless, Inc.*, N.D. Ohio No. 3:00 CV 7763, allowing plaintiffs who filed breach of contract suit

to aggregate damages based upon disgorgement theory because plaintiffs specifically alleged

disgorgement as a theory of recovery in the complaint; *also see In re Cardizem CD Antitrust

Litigation*, 90 F. Supp.2d 819 (E.D. Mich.1999), holding that plaintiffs allegation for

disgorgement constituted a benefit to the class and thereby making that claim common and

undivided for purposes of aggregation.

 The Second Circuit's holding in *Gilman v. BHC Securities, Inc.*, 104 F.3d 1418 (2d

Cir.1997) adopted the view that aggregation was not proper for punitive damages and started the

trend of Circuit Court holdings prohibiting the aggregation of punitive damages. In *Gilman*, a

putative class of BHC customers sought compensatory damages, litigation costs, punitive

damages and an injunction against the securities firm for allegedly accepting "kick-back"

payments for executing customer orders. Unable to individually satisfy the court's "Amount in Controversy" class members argued that the potential punitive damages should be aggregated to satisfy the jurisdictional amount in controversy. In rejecting this argument, the Second Circuit Court of Appeals acknowledged that aggregation was proper in some instances, but that the aggregation rule was inapplicable because "aggregation is not justified by the manner in which order flow payments originate or by the demand for punitive damages." Similarly, several other circuits have followed the *Gilman* court's refusal to aggregate punitive damages. In adopting the *Gilman* rule refusing the aggregation of punitive damages, the Eighth Circuit Court of Appeals stated:

> In holding that punitive damages ordinarily may not be aggregated, we join a growing number of circuits which have either explicitly or implicitly adopted the rationale articulated in *Gilman. See Gibson v. Chrysler Corp.*, 261 F.3d 927, 945-47 (9th Cir.2001); *Martin v. Franklin Capital Corp.*, 251 F.3d 1284, 1292-3 (10th Cir.2001); *Morrison v. Allstate Indemnity Co.*, 228 F.3d 1255, 1264-65 (11th Cir.2000); *Ard v. Transcon. Pipe Line Corp.*, 138 F.3d 596, 601-02 (5th Cir.1998); *Anthony v. Security Pac. Fin. Servs., Inc.*, 75 F.3d 311, 315 (7th Cir.1996). Two of those Circuits–the Fifth and the Eleventh–have recently retreated from earlier decisions which permitted the aggregation of punitive damages across a class of plaintiffs.

*Crawford v. F Hoffman-La Roche Ltd.*, 267 F.3d 760 (8th Cir.2001).

Similarly, the courts are divided in their allowance of the aggregation of disgorgement claims. "Disgorgement is an equitable remedy to force a defendant to give up the amount equal to the defendant's unjust enrichment. Disgorgement is not intended to compensate the victim of fraud." *Gavriles v. Verizon Wireless*, 194 F.Supp.2d 674 (E.D. Mich.2002), quoting *Securities and Exchange Commission v. Blavin*, 760 F.2d 706, 713 (6th Cir.1985). Defendants have the burden to show "to a legal certainty," that disgorgement, even if aggregated, would allow

Plaintiffs to satisfy the amount in controversy requirement. Plaintiffs have failed to meet this burden. The only evidence offered to suggest that disgorgement should be aggregated in this case to satisfy amount in controversy is a mere citation to *In re Cardizem CD Antitrust Litig.*, 90 F.Supp.2d 819, 824-29 (E.D. Mich.1999). Again, the 6th Circuit has been silent as to this issue, but the national trend is towards disallowing the aggregation of disgorgement in class action lawsuits. See *Gilman* at 1426-28; *Aetna U.S. Healthcare, Inc. v. Hoechst Aktiengesellschaft,* 54 F.Supp.2d 1042, 1049-51 (D.Kan.1999), holding that disgorgement is no exception to the non-aggregation rule.

## IV.    CONCLUSION.

As the foregoing illustrates, Defendant has failed to meet its burden of demonstrating complete preemption and thus has failed to meet its burden of demonstrating that removal based on federal question jurisdiction is appropriate.  Defendant has further failed to meet its burden of proving that the amount in controversy in the present matter exceeds the diversity jurisdiction threshold.  Accordingly, this matter should be remanded to the state court where it was originally filed.

Respectfully submitted,

R. Eric Kennedy (0006174)
WEISMAN, GOLDBERG, & WEISMAN,
    CO., L.P.A.
Suite 1600 Midland Building
101 Prospect Ave. West
Cleveland, Ohio 44115
(216) 781-1111

Don Barrett
Charles F. Barrett
BARRETT LAW OFFICE, P.A.

404 Court Square North
P.O. Box 987
Lexington, MS 39095
(662) 834-2376
ATTORNEYS FOR PLAINTIFF

## CERTIFICATE OF SERVICE

A copy of the forgoing has been filed electronically with the United States District Court of Ohio on this 7th day of October, 2002.

Respectfully submitted,

R. Eric Kennedy (0006174)
WEISMAN, GOLDBERG, & WEISMAN,
CO., L.P.A.
Suite 1600 Midland Building
101 Prospect Ave. West
Cleveland, Ohio 44115
(216) 781-1111